IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LANCER INSURANCE COMPANY,

    Plaintiff,

        v.

JET EXECUTIVE LIMOUSINE
SERVICE, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:19-CV-3024-TWT

## OPINION AND ORDER

This is a declaratory judgment action. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 237], the Defendants Jessica Barnes and Joseph Best's Cross Motion for Summary Judgment [Doc. 248], and the Defendant Cooper-Global Chauffeured Transportation, Inc.'s Cross Motion for Summary Judgment [Doc. 264]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [Doc. 237] is GRANTED in part and DENIED in part, the Defendants Jessica Barnes and Joseph Best's Cross Motion for Summary Judgment [Doc. 248] is GRANTED in part and DENIED in part, and the Defendant Cooper-Global Chauffeured Transportation, Inc.'s Cross Motion for Summary Judgment [Doc. 264] is GRANTED in part and DENIED in part.

## I.   Background

On April 5, 2018, a 2011 Freightliner Motor Coach ("the Motor Coach") was involved in a single-vehicle accident on Interstate 20 in Columbia County,

Georgia. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 1.) The Motor Coach was owned by the Defendant Jet Executive Limousine Service, Inc. ("Jet") and was carrying 18 passengers and the driver, Stephen Hoppenbrouwer. (*Id.* ¶¶ 1–2.) Jet insured the Motor Coach through the Defendant Philadelphia Indemnity Insurance Company. (*Id.* ¶ 4.) Though there are factual disputes regarding the specifics, the Defendants claim that their reservation of the Motor Coach was made through the Defendants Cooper-Global Chauffeured Transportation, Inc. ("Cooper-Global") and Hennessy Transportation, Inc. ("Hennessy"), which then referred the reservation to Jet to accommodate the passengers' specific request. (Defs. Barnes and Best's Statement of Add'l Fact in Opp'n to Pl.'s Mot. for Summ. J. ¶ 2–4.)

Cooper-Global and Hennessy had five insurance policies issued by the Plaintiff, Lancer Insurance Company ("Lancer"), at the time of the accident. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 5.) Lancer issued Hennessy two commercial auto liability policies, "the Hennessy Primary Policy" and "the Hennessy Excess Policy." (Compl., Exs. 5 & 6.) Lancer issued Cooper-Global three different policies: "the Cooper-Global Primary Policy," "the Cooper Global Excess Policy," and a commercial general liability policy ("the CGL Policy"). (*Id.*, Ex. 1–3.) An endorsement to the CGL Policy names Hennessy as an additional insured. (*Id.*, Ex. 3, at 6.) The Plaintiff filed this suit seeking declaratory relief that these five Policies do not obligate

it to provide coverage for any claims resulting from the accident. (Compl. at 13.) The Parties have filed cross motions for summary judgment on these claims, which the Court evaluates below.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

The Plaintiff raises several arguments in favor of its Motion for Summary Judgment. First, the Plaintiff argues that the Hennessy Policies and the Cooper-Global Excess Policy do not impose a duty to defend upon it because the accident did not involve a vehicle covered under the Policies. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 16–20.) Second, the Plaintiff argues that the CGL Policy's Auto Exclusion precludes coverage of the accident. (*Id.* at 20–

3

22.) Finally, the Plaintiff argues that the MCS-90B Endorsement of the Cooper-Global Excess Policy does not apply because the bus was completing an intrastate trip. (*Id.* at 24–25.) After the Plaintiff filed its Motion for Summary Judgment, many of the Defendants responded individually and filed their own Cross-Motions for Summary Judgment. Several Defendants presented their own arguments while adopting additional arguments of their fellow Defendants, particularly those arguments made by Jessica Barnes and Joseph Best. The result is a mosaic of overlapping arguments presented in different manners. Rather than address each responsive brief separately, the Court will evaluate each disputed Policy in turn, noting specific arguments made by the Parties when necessary to avoid any unwarranted repetition.

## A. The Cooper-Global Primary Policy

In its Complaint, the Plaintiff seeks a declaration that it has no obligation to provide coverage under the Cooper-Global Primary Policy. (Compl. at 13.) However, it is undisputed that the Plaintiff has already tendered the Policy's limit to resolve the claims against its insureds. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 55.) Further, the Plaintiff implicitly abandons its claims for such a declaration in its briefing. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 26.) As a result, there is no genuine issue of material fact that the Plaintiff is not entitled to a declaration that it has no coverage obligation under the Cooper-Global Primary Policy.

### B. The CGL Policy

The Plaintiff issued Cooper-Global the CGL Policy, which obligated the Plaintiff to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Compl., Ex. 4, at 12.) An endorsement to the CGL Policy lists Hennessy as an additional named insured under the CGL Policy. (*Id.*, Ex. 4, at 6.) In support of its motion, the Plaintiff directs the Court to a "standard auto exclusion" included in the Policy which it argues bars coverage of this accident. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 20.) This provision excludes coverage for "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." (Compl., Ex. 4, at 15.) Further, the exclusion notes that it "applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured" if the harms resulted from the "use or entrustment to others of any" automobile "owned or operated by or rented or loaned to any insured." (*Id.*) The Plaintiff argues that this exclusion applies to the allegations in the underlying lawsuits regarding the accident. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 20–22.) The Defendants contest this assessment because the Motor Coach was not "owned or operated or rented or loaned to any insured." (Defs. Barnes & Best's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 22–23; Def. Cooper-Global's Br. in

Opp'n to Pl.'s Mot. for Summ. J., at 15.) In reply, the Plaintiff notes that Georgia courts read auto exclusions broadly, and because these "claims are inextricably linked to the use of an auto[,]" the exclusion must apply. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ. J. [Doc. 278], at 21.)

By its plain language, the CGL Policy applies to the accident here absent a valid exclusion. The Plaintiff appears to concede as much by focusing its argument exclusively on the auto exclusion. Under Georgia law, the insurer has the burden of proving an exclusion applies. *See York Ins. Co. v. Williams Seafood of Albany, Inc.*, 223 F.3d 1253, 1255 (11th Cir. 2000) (citing *Nationwide Mut. Fire Ins. Co. v. Rhee*, 160 Ga. App. 468, 471 (1981)). To satisfy its burden, it must show that the injuries alleged in the underlying lawsuits arose out of the use of an auto owned, operated, rented by, or leased to an insured. Clearly, the injuries caused by the accident arose out of the use of an "auto" as defined in the Policy.[1]  The question before the Court is whether that auto was owned, operated, rented by, or leased to an insured.

To answer this question, the Court must first determine who is insured under the CGL Policy, which is covered in Section II of the Policy. Beyond Cooper-Global and Hennessy as corporations, the CGL Policy includes "your 'employees', . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." (Compl.,

---

[1] "Auto" is broadly defined in the CGL Policy to include any "land motor vehicle . . . designed for travel on public roads. (Compl. Ex. 4, at 24.)

Ex. 4, at 21.)

Given these broad definitions, the Court must determine whether the Motor Coach's driver, Hoppenbrouwer, is an insured here, as the Parties dispute whether he qualifies as a Cooper-Global or Hennessy employee. The Plaintiff argues that the underlying lawsuits "allege that Hoppenbrouwer operated the Motor Coach as an employee of Hennessy and Cooper-Global." (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 21.). In response, the Defendants characterize the underlying suits as alleging "that Cooper-Global and Hennessy are vicariously liable for Jet/Hoppenbrouwer's negligence and/or independently liable for their own negligence in selecting and entrusting Hoppenbrouwer to drive" the Motor Coach. (Defs. Barnes & Best's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 22; *see also* Def. Sheehy's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 8 (arguing that Hoppenbrouwer was an independent contractor for Cooper-Global and Hennessy, rendering them liable through the CGL Policy).)

In the end, it is not necessary to sort out the exact basis for any liability of Cooper-Global and Hennessy for the actions of Hoppenbrouwer. If he was an insured employee, coverage is excluded under the auto exclusion. If there is vicarious liability under any plausible theory against the named insureds Cooper-Global and Hennessy arising out of the operation of the Motor Coach, coverage is excluded under the auto exclusion. *Video Warehouse, Inc. v. S. Tr. Ins. Co.,* 297 Ga. App. 788, 790–91 (2009) ("The point is, for liability to attach

to Video Warehouse under this particular complaint, the employee had to be acting within the scope of his employment or performing duties related to the conduct of Video Warehouse's business. Yet, if the employee was so acting or was performing such duties, then by definition he was an 'insured' under the policy, and under the exclusionary clause, the policy expressly excluded from coverage bodily injury arising out of the use of an automobile owned or operated by such an insured."). If he was not an insured, there is no coverage under the policy to begin with. *Id.* at 791. Therefore, the Plaintiff is entitled to summary judgment with respect to coverage under the CGL Policy.

### C. The Cooper-Global Excess Policy

The Parties dispute whether several provisions of the Cooper-Global Excess Policy trigger coverage obligations for the Plaintiff. The Court addresses each of these disputed provisions and endorsements individually.

#### i. The Motor Coach is Not a Covered Vehicle

In many of the responsive briefs, the Defendants argue that the Motor Coach is a covered vehicle under the Cooper-Global Excess Policy. As discussed above, the Plaintiff concedes that the Cooper-Global Primary Policy could provide coverage of the Motor Coach. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 12–13.) The Defendants argue that the Cooper-Global Excess Policy is a "follow-form" policy as it relates to the Primary Policy, and without an explicit exclusion of coverage, the Motor Coach remains covered under the Excess Policy. (Defs. Barnes & Best's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 16–

19; Defs. Hudson & Dill's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 8–14.) The
Plaintiff points to a provision in the Cooper-Global Excess Policy dictating that
any conflicting or differing provisions between the two policies give way to the
provisions of the Excess Policy. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ.
J., at 3–7.) The Defendants respond by claiming that any conflict that exists
between the two Policies is too narrow to eliminate coverage of hired vehicles.
(*See, e.g.*, Defs. Barnes & Best's Reply Br. in Supp. of Defs.' Cross Mot. for
Summ. J., at 3–5.)

Because the resolution of this dispute relies on the interaction between
the two Cooper-Global Policies, a summary of the Policies is necessary. The
Cooper-Global Primary Policy contains a "Schedule of Coverages and Covered
Autos." (Compl., Ex. 2, at 4.) This Schedule lists a series of coverage options
alongside the "Covered Autos," the coverage limits, and the premiums owed for
each option. (*Id.*) Only those coverage options with a premium charge listed
next to it are included in the Policy. (*Id.*) There are four coverage options with
premiums charged: "Liability;" "Uninsured Motorists;" "Physical Damage
Specified Causes of Loss Coverage;" and "Physical Damage Collision
Coverage." (*Id.*) The group of "Covered Autos" under each coverage are
indicated by numbers which are defined in the "Business Auto Coverage
Form." (Compl., Ex. 2, at 4, 64.) All coverages except for "Liability" have only
one number—7—listed under the "Covered Autos." The "Business Auto
Coverage Form" shows that 7 stands for the vehicles "described in Item Three

9

of the Declarations[.]" Item Three of the Declarations contains a list of ninety-two vehicles. (*Id.*, Ex. 2, at 5–7.) Thus, all applicable coverages except for the "Liability" coverage apply only to these ninety-two vehicles. The "Liability" coverage applies to three categories of vehicles, listed as "7, 8, 9." (*Id.*, Ex. 2, at 4.) According to the policy, "8" indicates coverage for vehicles that the insured "lease[s], hire[s], rent[s], or borrow[s]." (*Id.*, Ex. 2, at 64.) "9" indicates coverage for vehicles the insured "do[es] not own, lease, hire, rent, or borrow that are used in connection with [the insured's] business." (*Id.*) Thus, the "Liability" coverage under the Cooper-Global Primary Policy extends beyond the vehicles owned by Cooper-Global and includes unlisted vehicles used in connection with Cooper-Global's business. And, as discussed above, Lancer has already tendered this Policy's limit to resolve the claims against its insureds.

The Defendants argue that the Cooper-Global Excess Policy is a "follow form" policy because of the following language included in the preamble of the "Commercial Excess Liability Coverage Form":

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply.

(*Id.*, Ex. 3, at 11.) The Defendants then direct the Court to the "Schedule of Covered Autos," which identifies twenty-three vehicles as covered autos. (*Id.*,

Ex. 3, at 5.) Because the Cooper-Global Excess Policy lists these twenty-three vehicles but does not explicitly exclude coverage for vehicles included under groups "8" and "9" from the Primary Policy, the Defendants argue that this excess coverage applies to those leased and non-leased vehicles used in connection with Cooper-Global's business. (Defs. Barnes & Best's Br. in Opp'n to Pl.'s Mot. for Summ. J, at 17–19.) The Defendants also argue that the Policy is at least ambiguous and must be construed against the Plaintiff and in favor of coverage. (*Id.* at 19–21.)

The Defendants rely heavily on the absence of an explicit exclusion of the non-owned vehicles covered under the Primary Policy. However, such an exclusion is not necessary here, as the Cooper-Global Excess Policy clearly limits coverage to the twenty-three vehicles specifically identified in the policy. The Cooper-Global Primary and Excess Policies detail the coverages provided through different formats. The Primary Policy lists several different types of coverages and then uses a numeric code to describe the "Covered Autos" to convey this information on one page. (Compl., Ex. 2, at 4.) On the other hand, the Excess Policy only details one type of coverage. (*Id.*, Ex. 3, at 3.) Rather than numeric codes, the Excess Policy includes a "Schedule of Covered Autos for Auto Liability." (*Id.*, Ex. 3, at 5.) As the text above this list of vehicles states in bolded type, "THIS ENDORSEMENT CHANGES THE POLICY." (*Id.*) Here, it seems clear that that the "Schedule of Covered Autos for Auto Liability" in the Excess Policy conflicts with the "Covered Autos" indicated by numeric

codes in the Primary Policy. As a result, the Court finds that the collection of Covered Autos listed in the Primary Policy as "7, 8, 9" gives way to the schedule of Covered Autos under the Excess Policy, and that the Motor Coach does not fall within the Excess Policy's Covered Autos.

The Defendants argue that only the two lists of vehicles conflict in the two Policies, and therefore the list in the Excess Policy's schedule should merely replace the list of ninety-two vehicles in the Primary Policy. But that argument assumes these lists represent identical categories, which is incorrect. While the Excess Policy's schedule lists the covered autos under the Policy, the Primary Policy's schedule of vehicles merely defines the vehicles included in "Specifically Described 'Autos'" of the Policy's Business Auto Coverage Form. (*Id.*, Ex. 2, at 4–7, 64.) Because these lists define different terms within the relevant policies, the Defendants cannot argue that the specific vehicles listed in each Policy constitute the full extent of the differences between the Policies. Both Policies define the set of covered autos differently, and because the Motor Coach is not listed in the Excess Policy's covered autos, its coverage is not triggered here.

### ii.  The MCS-90B Endorsements Provide No Coverage Here

Anticipating an argument by the Defendants, the Plaintiff argues that the Cooper-Global Excess Policy's MCS-90B Endorsement does not apply to the accident here. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 24–25.) The MCS-90B Endorsement is a means of complying with federal insurance

regulations for motor carriers:

> An MCS–90 endorsement to an automotive insurance policy obligates an insurer to cover an insured's negligence involving vehicles subject to the financial responsibility requirements of the Motor Carrier Act. The Motor Carrier Act, in turn, creates minimum levels of financial responsibility for the transportation of property by motor carrier within the United States.

*Grange Indem. Ins. Co. v. Burns*, 337 Ga. App. 532, 533 (2016) (citation, quotation marks, and alterations omitted). In essence, an MCS-90 endorsement[2] "creates a suretyship, which obligates an insurer to pay certain judgments against the insured arising from interstate commerce activities, even though the insurance contract would have otherwise excluded coverage." *Id.* at 534 (citation and quotation marks omitted). The Plaintiff argues that because the route in this case was entirely contained to Georgia, the MCS-90B endorsement does not apply here. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 24.) This argument is supported by the statute granting the Secretary of Transportation authority to enforce certain minimum coverage amounts for motor carriers:

> The Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts established by the Secretary covering public liability and property damage for the transportation of passengers for compensation by motor vehicle in the United

---

[2] MCS-90 endorsements apply to motor carriers that transport property, while MCS-90B endorsements apply to motor carriers of passengers. *Compare* 49 C.F.R. § 387.7 *with* 49 C.F.R. § 387.31. Federal appellate courts have found that their MCS-90 precedents control their MCS-90B interpretations and vice versa. *See, e.g.*, *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 249 n.7 (5th Cir. 2010)

States between a place in a State and—

> (A) a place in another State;
> (B) another place in the same State through a place outside
> of that State; or
> (C) a place outside the United States.

49 U.S.C. § 31138(a)(1); *see also Canal Ins. Co.*, 625 F.3d at 249 (holding that the character of the journey at the time of the loss determines the MCS-90 endorsement's applicability and noting that its position is the majority view).

In response, the Defendants raise several arguments. Several Defendants claim that the endorsement "applies to all federally authorized carriers regardless of" whether the trips occurred in interstate or intrastate travel. (Defs. Hudson & Dill's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 17; *see also* Def. Strickler's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 22.) Further, they argue that the endorsement should be construed and applied liberally to serve the legislative intent behind the requirements. (Defs. Hudson & Dill's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 17.) Alternatively, the Defendants Armstrong and Cooling appear to concede that the endorsement requires the trip to be interstate in nature, arguing that the trip here was merely one leg in an interstate trip for individuals traveling from outside Georgia to attend the Masters. (Defs. Armstrong & Cooling's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 4–7.) The Defendants cite Eleventh Circuit case law from a different context that describes intrastate legs of interstate journeys as falling within the meaning of "interstate commerce." (*Id.* at 5–6.)

14

The Eleventh Circuit has acknowledged its case law on MCS-90 endorsements is sparse, and it has not opined on whether such endorsements only cover incidents that occur during interstate journeys. *Nat'l Specialty Ins. Co. v. Martin-Vegue*, 644 F. App'x 900, 906 (11th Cir. 2016). Here, the Court adopts the majority view that the MCS-90B endorsement's applicability is determined by whether the vehicle is engaged in interstate travel at the time of the loss, as this view most closely aligns with the statutory text requiring such endorsements. *See* 49 U.S.C. § 31138(a)(1); *see also Nat'l Specialty Ins. Co.*, 644 F. App'x at 907 n.9 (adopting, because the parties agreed, the perspective that "the time of the accident is the relevant focal point" in determining certain characteristics that would invoke the MCS90 endorsement).

Having determined the majority view controls here, the Court must assess whether the Motor Coach's journey between Atlanta and Augusta was an interstate or intrastate trip. In other contexts, the Eleventh Circuit has provided the general rule that "trips within a single state are made in interstate commerce when they are part of a practical continuity of movement of the goods in interstate commerce." *Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1215 (11th Cir. 2011) (quotation marks omitted). For example, in *Abel*, the Eleventh Circuit held that a shuttle company that transported individuals to and from several Florida airports without leaving the state engaged in interstate commerce. *Id.* at 1216. Several conditions were critical to the Panel's

analysis: (1) the shuttle passengers had mostly flown from or were about to fly to other states or countries; (2) travelers often boarded these shuttles with tickets purchased in packages that included airfare and hotel accommodations; and (3) these packages resulted from an arrangement between the shuttle company and online travel companies. *Id.* at 1216–17. The Eleventh Circuit also cited case law that held "the lack of coordination with other transportation" providers could render a journey "purely intrastate." *Id.* at 1216 (quotation marks omitted) (citing *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 258 (3d. Cir. 2005)).

Ultimately, this Court finds that the relevant journey here constituted intrastate travel because there was no practical continuity of movement or evidence of coordination between transportation providers. First, regarding the practical continuity of movement, the undisputed facts show that the Motor Coach's planned route was from the Atlanta hotel to the Masters Tournament in Augusta. (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 3.) The Defendants argue that the Motor Coach's journey must be "viewed as part of overall, continuous interstate travel" because the Defendants' "trips began and terminated outside Georgia[.]" (Defs. Armstrong & Coolings's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 6; *see also* Defs. Barnes and Best's Response to Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 3.) The Defendants urge this Court to read the endorsement liberally to align its coverage with the "evident purpose" of the

federal requirement. (Defs. Hudson & Dill's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 23.) However, the Court is not entitled to construe "interstate commerce" more broadly than precedent allows. The fact that the Defendants experienced the Motor Coach route as merely one leg of their trip to Augusta is not determinative of whether the Motor Coach maintained the practical continuity of their journey. Such a finding would massively expand activities that fall within interstate travel, rendering every outing taken by out-of-state tourists interstate commerce. Instead, the Court finds there is no practical continuity of movement between the Defendants' interstate journeys to arrive in Atlanta and the Defendants' intrastate journey from the Atlanta hotel to Augusta. In essence, the arrival at the Atlanta hotel interrupts the Defendants' practical continuity of movement in interstate travel.

Second, and related to the practical continuity of movement, there was no coordination between the interstate and intrastate transportation providers. Evidence in the record indicates that the Motor Coach passengers were invited to the Masters by an accounting firm, Cherry Bekaert, and were responsible for their own travel from the Atlanta airport to the hotel. (Thompson Dep., at 34:1–5.) Once the passengers were at the hotel, Cherry Bekaert arranged for bus travel to Augusta with Hennessy. (Defs. Armstrong & Cooling's Add'l Material Facts ¶ 78.) This lack of coordination highlights this disconnect between the Defendants' interstate and intrastate travel. Because these two legs of the journey were not coordinated and did not represent a

17

practical continuity of movement, the Motor Coach's journey was purely intrastate travel, and the Cooper-Global Excess Policy's MCS-90B endorsement therefore does not apply here.

### iii. The Form F Endorsements Do Not Apply to Cooper-Global

The Parties make similar arguments regarding the Form F endorsements attached to Hennessy and Cooper-Global's Policies. As some of the Defendants describe it, a "Form F Endorsement is an intrastate version of an MCS-90B Endorsement[.]" (Defs. Armstrong & Cooling's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 12.) The Form F endorsements at issue here are largely identical to those evaluated in *Ross v. Stephens*, 269 Ga. 266, 269 (1998). In that case, the Supreme Court of Georgia found that such an endorsement indicates an agreement "that the insurer would pay the statutory minimum to a party injured by [an insured's] vehicle not specifically identified in the insurance policy." *Id.* Georgia's Public Service Commission ("PSC") has set the statutory minimum at $100,000 per claimant and up to $500,000 per incident involving a vehicle with a seating capacity of over twelve passengers. *See* Ga. Comp. R. & Regs. 515-16-11-.03. The Plaintiff argues that because it already offered to tender $1.5 million under the Cooper-Global Primary Policy, the Form F endorsement imposes no additional obligation. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 25.)

The Defendants raise a variety of arguments in response to the Plaintiff's view of the Form F endorsement. Several Defendants argue that

Georgia law requires payment of the full policy amount under Form F, not just the statutory minimum. (Defs. Armstrong & Cooling's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 14.) Further, these Defendants argue that the Plaintiff's tender of $1.5 million under Cooper-Global's Primary Policy does nothing to relieve Hennessy of its Form F obligations. (*Id.* at 16.) Other Defendants argue Hennessy must pay the statutory minimum of $500,000 under the Form F endorsements. (Defs. Hudson & Dill's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 23–27.)

The Defendants imply that Cooper-Global's tender of its Primary Policy limit extinguishes its Form F liability. (*Id.* at 26 ("Allowing Hennessy to escape payment simply because Cooper-Global had already tendered an offer would create perverse incentives on the part of the insurers of motor carriers to attempt to wait each other out."); *see also* Defs. Armstrong & Cooling's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 16 ("Lancer's tender for Cooper Global of its $1.5 million auto policy limits does nothing for Hennessy in the face of the verdicts[.]").) This implication aligns with the Supreme Court of Georgia's view that when the statutory minimum is paid to an injured party, Georgia's "public policy is achieved by the assurance to the motoring public of existence of the financial compensation the PSC has deemed minimally necessary[,] . . . and the insurer has provided no more than the liability coverage it agreed to provide the motor common carrier." *Ross*, 269 Ga. at 708. As determined above, the Plaintiff's tender under the Cooper-Global Primary Policy provides

19

coverage as to this accident for at least $1.5 million. This amount exceeds the Form F endorsement minimum and satisfies the public policy of compensating victims to the extent determined by the PSC. *Cf. Nat'l Specialty Ins. Co.*, 644 F. App'x at 906–07 (finding that MCS-90 endorsements do not apply where a carrier's other insurance coverage provides compensation equal to or greater than the statutory minimum). Thus, the Plaintiff's tender under the Cooper-Global Primary Policy extinguishes any Form F endorsement coverage under the Cooper-Global Excess Policy.

As a result of the above analyses, none of the disputed provisions or endorsements of the Cooper-Global Excess Policy are triggered by this accident. Therefore, there is no genuine issue of material fact that the Plaintiff is entitled to summary judgment on its declaratory claim that is owes no coverage under the Cooper-Global Excess Policy here.

### D. The Hennessy Policies

The Hennessy Policies receive much less attention in the briefing than Cooper-Global's Policies. For example, the Defendants Barnes and Best only address the Cooper-Global Policies, and most Defendants adopt this briefing as their own. (*See* Defs. Barnes & Best's Br. in Opp'n to Pl.'s Mot. for Summary Judgment, at 5 (noting that Lancer issued five policies to Cooper-Global and Hennessy but only the three Policies issued to Cooper-Global "unambiguously provide coverage").) The Plaintiff cites provisions of the Hennessy Policies that define the covered vehicles and notes that the Policies do not include the Motor

Coach. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 16–18.) None of the Defendants argue to the contrary.

The only arguments implicating the Hennessy Policies are related to the Policies' Form F endorsements. (Defs. Hudson & Dill's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 23–27; Defs. Armstrong & Cooling's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 12–16.) The Defendants argue that the tender of $1.5 million under the Cooper-Global Primary Policy does nothing to alleviate Hennessy's Form F liability under its own Policies. (*See, e.g.*, Defs. Hudson & Dill's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 25–26.) In response, the Plaintiff argues that Hennessy is covered under Cooper-Global's Primary Policy. To support this contention, the Plaintiff points to the Cooper-Global Primary Policy's definition of the insureds[3] and an expert report stating that if Cooper-Global and Hennessy merged on February 1, 2018, Cooper-Global's insurance would cover Hennessy. (Pl.'s Reply Br. to Defs. Armstrong & Cooling's Br. in Opp'n to Pl.'s Mot for Summ. J., at 18; Pl.'s Reply Br. to Defs. Hudson & Dill's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 15.) However, the Plaintiff points to no evidence indicating a merger between the companies occurred on February 1, 2018, beyond the pleadings. Indeed, one of the Plaintiff's filings concedes that "there is conflicting evidence regarding whether Cooper-Global and Hennessy

---

[3] The Plaintiff's briefing cites to Doc. 102 for this contention, but that docket entry is a motion to appear *pro hac vice*. Instead, the Court assumes that the Plaintiff intended to cite to Doc. 1-02, which is the Cooper-Global Primary Policy.

merged." (Pl.'s Response to Defs. Hudson & Dill's Statement of Add'l Fats ¶ 10.) Further, the Plaintiff does not point to a specific provision of the Cooper-Global Primary Policy's definitions that would include Hennessy. Unlike the CGL Policy, which explicitly includes both Cooper-Global and Hennessy as named insureds, the Cooper-Global Policy does not name Hennessy. Because there appears to be a genuine dispute as to whether the two companies merged before the accident, and because there is no other evidence suggesting Hennessy is a named insured under the Cooper-Global Excess Policy, Cooper-Global's tender of $1.5 million does not alleviate Hennessy's Form F liability.

The Plaintiff relies exclusively on this tender to relieve Hennessy's Form F liability. Because none of the other Policies trigger any coverage as to Hennessy, there is insufficient coverage to meet the statutory minimum of $500,000. Thus, the Form F endorsements of the Hennessy Policies are triggered by the accident, and there is no genuine issue of material fact that the Plaintiff is not entitled to a declaration that it has no coverage obligations under the Hennessy Policies.

### E. The Defendants' Remaining Arguments Fail

#### i. O.C.G.A. § 33-24-14 Does Not Preclude Reliance on Exclusions

The Defendants Hudson and Dill claim that the Plaintiff "failed to prove" it delivered the Policies to Cooper-Global prior to the accident, and that under Georgia law, such a failure renders the Plaintiff unable to rely upon

22

exclusions in those Policies. (Defs. Hudson & Dill's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 14–15.) However, the Defendants point to no evidence in the record suggesting the Policies were not delivered to Cooper-Global. Instead, the Defendants place the burden on the Plaintiff to prove such delivery was made and insist that "whether Cooper-Global [] received the policy is an issue of disputed fact to be decided by a jury[.]" (*Id.* at 15.) Bare accusations that the delivery did not occur are insufficient at this stage in the proceedings to create a genuine issue of material fact. As a result, Georgia law does not prevent the Plaintiff from relying on exclusions within the Policies here.

### ii.  The Defendants Fail to Present Evidence of Dual Agency

The Defendants Robin and Sahil Raina argue that a dual agent for the Plaintiff and its insureds was responsible for the purchase of these Policies. (Defs. Raina & Raina's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 3–4.) The Raina Defendants point to evidence in the record that the Plaintiff paid Cooper-Global and Hennessy's insurance broker a percentage on their policy purchases. (Rose Dep. at 41:5–8.) However, under Georgia law, insurance brokers "are generally considered the agent of the insured, not the insurer." *Eur. Bakers, Ltd. v. Holman*, 177 Ga. App. 172, 173 (1985). Insurance brokers may be considered agents of the insurer under two circumstances: first, "if the plaintiff brings forth evidence that the insurer granted the agent or broker authority to bind coverage on the insurer's behalf[;]" and second, "if an insurer holds out an independent agent as its agent and an insured justifiably relies

23

on such representation." *Popham v. Landmark Am. Ins. Co.*, 340 Ga. App. 603, 606 (2017) (quotation marks omitted). The Raina Defendants rely solely on the Plaintiff's payment to the insurance broker in arguing there remains a genuine issue of material fact as to dual agency. Under Georgia law, this is insufficient. Without evidence in the record indicating the Plaintiff's grant of authority to bind it or the Plaintiff's holding out of the broker as an agent, the Raina Defendants' argument fails.

## IV.   Conclusion

In summary, there is no genuine issue of material fact that the Plaintiff is entitled to a declaration that it has no coverage obligations under the Cooper-Global Excess Policy and the CGL Policy. There is also no genuine issue of material fact that the Plaintiff is not entitled to a declaration that it has no coverage obligations under the Cooper-Global Primary Policy and the Hennessy Policies. As a result, the Plaintiff's Motion for Summary Judgment [Doc. 237] is GRANTED in part and DENIED in part, the Defendants Jessica Barnes and Joseph Best's Cross Motion for Summary Judgment [Doc. 248] is GRANTED in part and DENIED in part, and the Defendant Cooper-Global Chauffeured Transportation, Inc.'s Cross Motion for Summary Judgment [Doc. 264] is GRANTED in part and DENIED in part. Because the Court has decided these motions without the need for oral argument, the pending motions for oral argument [Docs. 250 & 254] are DENIED as moot. The Clerk is directed to enter a final judgment in favor of the Plaintiff declaring that there is no

coverage for the accident described in the Complaint with respect to the Cooper-Global Excess Policy and the CGL Policy.

SO ORDERED, this ___14th___ day of July, 2022.


THOMAS W. THRASH, JR.
United States District Judge